UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:08CV-60-R

ENERGISTICA, S.A., et al.                                                                              PLAINTIFFS

v.

MERCURY PETROLEUM, INC., et al.                                                              DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiffs' Motion to Dismiss the Counterclaim of Defendants Petro Development and 530 West Main (Docket #9). Defendants Petro Development and 530 West Main filed a response (Docket #11) to which Plaintiffs replied (Docket #14). This matter is now ripe for adjudication. For the reasons that follow, Plaintiffs' Motion to Dismiss is DENIED.

**BACKGROUND**

This case involves a dispute over the ownership rights in several oil wells located on a farm owned by Danny Burris in Adair County, Kentucky. On September 27, 2007, Energistica and Mercury Petroleum Co, Inc. ("Mercury") entered into an Amended Assignment of Oil and Gas Lease ("Amended Assignment"). Under the Amended Assignment, Energistica and Mercury agreed to divide the leased portion of the Burris farm (the "Property") into a checkerboard for purposes of dividing oil drilling and exploration rights between the two companies. This checkerboard arrangement divides the Property into a grid of four-acre square parcels. Under the terms of the Amended Assignment, the checkerboard protocol provides the exclusive means of drilling for oil on the Property; that is, Energistica and Mercury are permitted to drill for oil on the Property only

on squares they select pursuant to the checkerboard protocol. Energistica indicates that, to date, it has drilled four wells and selected five checkerboard squares pursuant to the Amended Assignment.

Pursuant to the checkerboard method, Energistica was entitled to first select two parcels. Then the parties would alternately select single parcels with Mercury getting the next selection (i.e. the third assigned parcel. Energistica was to commence drilling on at least one of its assigned parcels within thirty days of the execution of the Amended Assignment. Within sixty days of execution, Energistica was to drill a single well deep enough to test the Knox formation. Within sixty days of Energistica's completion of its first well, Mercury was to select a parcel and drill a well deep enough to test the Knox formation, unless oil was encountered sooner. Within sixty days of Mercury's drilling and completing its first well, Energistica was to drill a well on the second of its first two chosen parcels deep enough to test the Knox formation, unless oil was encountered sooner. Thereafter, Energistica and Mercury were to continue to alternate the selection of single parcels and drill at any time within the sixty day drilling schedule.

On April 14, 2008, Peter Smith, Energistica's acting President, received a call from Martin R. Twist, President of Defendants Petro Development and 530 West Main. Twist advised Smith that he owned a stake in the Burris lease, and that he and Terry Goff, who controls Mercury, were upset that Energistica applied a hydraulic fracturing treatment to Energistica Well No. 3 in an effort to make it a producing well. Twist alleged that the acid applied to Energistica Well No. 3 caused production from Mercury Well No. 1 to drop. Twist also alleged that Mercury Well No. 2 stopped producing altogether. Twist informed Smith that Energistica had violated the Amended Assignment by picking certain of its wells out of turn and not drilling to the required depth. Twist stated that his position was that Energistica should forfeit its rights to Energistica Well No. 3 as well as all

equipment at that site, and should pay $600,000 per month in damages to compensate for the purported lost production experienced in Mercury Well No. 1.

Plaintiffs filed this declaratory judgment action on April 17, 2008. Plaintiffs seek a judgment that they have fully complied with the terms of the Amended Assignment and that they are not liable to any of the Defendants for any oil production loss to Mercury Well No. 1. Plaintiffs filed an Amended Complaint on April 30, 2008.

Defendants Petro Development and 530 West Main filed a counterclaim on May 9, 2008, seeking a declaratory judgment that Energistica has forfeited its rights to all of its wells on the Burris lease based on a breach of the Amended Assignment and damages incurred as a result of Energistica's alleged violation of the Amended Assignment and use of hydraulic fracturing treatments.

In subsequent filings made with this Court, Energistica indicated that Energistica and Mercury have entered into a settlement resolving all claims between them.

## STANDARD

Plaintiffs assert that Defendants Petro Development and 530 West Main lack standing to bring their counterclaim. "When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

3

action will not do." *Bell Atl. Corp. v. Twombly*, __ U.S. ___, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation and citations omitted). Factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

## DISCUSSION

Energistica asserts that the terms of the assignments on which Petro Development and 530 West Main base their Counterclaim preclude Petro Development and 530 West Main from asserting any claims arising out of the Amended Assignment. Thus, Energistica argues that neither Petro Development nor 530 West Main have standing to assert a claim in this lawsuit.

Privity of contract is the "relationship between parties to a contract, allowing them to sue each other but preventing a third person from doing so." *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 579 (Ky. 2004) (quoting BLACK'S LAW DICTIONARY 1217 (7th pocket ed. 1999)). Generally, an assignee stands in the shoes of the assignor, taking the subject of the assignment with all the rights thereto possessed by the assignor. *Guar. Deposit Bank of Cumberland v. Reedy*, 272 S.W.2d 341, 342 (Ky. 1954); *Whayne Supply Co. v. Morgan Constr. Co.*, 440 S.W.2d 779, 783 (Ky. 1969). A claim good in the hands of an assignor is ordinarily equally good and free from defenses in the hands of his assignees. *Reedy*, 272 S.W.2d at 342. The assignee normally takes subject to all equities and defenses which could have been set up against the chose in the hands of the assignor at the time of the assignment. *Id.*; *Whayne Supply Co.*, 440 S.W.2d at 783.

To determine whether either Petro Development or 530 West Main have standing to bring a claim against Energistica for breach of the Amended Assignment, this Court must examine and construe the various contracts between the parties. "[T]he construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." *Frear v. P.T.A. Indus.*, 103 S.W.3d 99, 105 (Ky. 2003) (quoting *First Commonwealth Bank v. West*, 55 S.W.3d 829, 835 (Ky. Ct. App. 2000)). If an ambiguity exists, "the court will gather, if possible, the intent of the parties from the contract as a whole, and in doing so will consider the subject matter of the contract, the situation of the parties and the conditions under which the contract was written, by evaluating extrinsic evidence as to the parties' intentions." *Id.* (internal quotation omitted). Under Kentucky contract law, a contract is ambiguous "if it is reasonably susceptible to different or inconsistent interpretations." *Transport Ins. Co. v. Ford*, 886 S.W.2d 901, 905 (Ky. Ct. App. 1994). However, "in the absence of ambiguity a written instrument will be enforced strictly according to its terms." *Frear*, 103 S.W.3d at 105 (quoting *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966)). The Court will "interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Id.*

530 West Main is party to two assignments ("530 West Main Assignments") between itself and Mercury, dated October 19 and 27, 2007. Pursuant to these assignments, 530 West Main received the rights to:

> 70.00% or 100% of [eight] *wellsite drilling locations* subject to a checkerboard agreement between [Mercury] and Energistica S.A. meaning [530 West Main] may choose [eight] of [Mercury's] wellsite locations subject to [Mercury's] retained checkerboard interest and subject to the terms and conditions of the "AMENDED ASSIGNMENT OF OIL & GAS LEASE" dated 27 September, 2007 between

Mercury Petroleum and Energistica, S.A.[1]

The 530 West Main Assignments expressly state that they "shall only convey interest in [eight] well locations and not any interest in and to the underlying lease."

Petro Development is party to an Assignment of Interest in Oil and Gas Well between itself and American Oil and Gas Resources, Inc. (the "Petro Development Assignment"). Pursuant to the terms of the Petro Development Assignment, Petro Development received a twenty-five percent working interest in one of Mercury's wells on the Burris lease. The section entitled "Reserved Rights" states, in pertinent part, that "except for the Subject Interests assigned hereby, this Assignment does not convey any other interest in the Lease [between Mercury and American Oil and Gas Resources dated October 19, 2007], the leasehold acreage and the oil and gas formations covered thereby; and Assignor expressly reserves all of its remaining right, title and interest in and to the Lease. . ." Neither Energistica nor Mercury is a party to the Petro Development Assignment. The Petro Development Assignment does not refer to the Amended Assignment.

Although the 530 West Main Assignments state that they shall convey no interest in the underlying lease (the Amendment Assignment), the 530 West Main Assignments specifically state

---

[1] In the October 19, 2007 assignment, Mercury assigned its right to choose three well site drilling locations to 530 West Main and on October 29, 2007, the right to choose five well site locations.

On June 5, 2008, three assignments from 530 West Main to Mercury, dated December 28, 2007, were filed with the Adair County clerk. There is language in each of the assignments that purports to reassign to Mercury three wellsite drilling locations, for a total of nine wellsite drilling locations. The language which reassigns wellsite drilling locations to Mercury in the first of these three assignments assigns wells that were assigned to 530 West Main on October 29, 2008. 530 West Main challenges the validity of the latter two assignments. 530 West Main asserts that it retains the right to choose five wellsite drilling locations (from among Mercury's choices) pursuant to the Amended Assignment. For purposes of this motion, this Court will take 530 West Main's allegations as true. *See Lawrence*, 188 F.3d at 691.

that 530 West Main's selection of wellsite locations shall be conducted subject to the terms and conditions of the checkerboard method prescribed by the Amended Assignment. The checkerboard method is dependent on the parties drilling wells on their selected locations according to the assigned deadlines; the selection and drilling of subsequent wells is dependent on the completion of the well on the parcel previously selected. Inherent in the conveyance of the eight well locations is the ability to ensure that Plaintiff complies with the checkerboard process.

In their Counterclaim, Petro Development and 530 West Main claim that Energistica violated the Amended Assignment when it failed to comply with the selection scheme by failing to drill to the Knox formation and by failing to complete the well on its third wellsite drilling location according to the deadline. For the purposes of this motion, the Court finds that 530 West Main had standing to bring the Counterclaim. Having found that 530 West Main has standing, the Court will refrain from addressing the standing of Petro Development at this time.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Dismiss is DENIED.

An appropriate order shall issue.