UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:08CV-60-R

ENERGISTICA, S.A., et al.                                                                                    PLAINTIFFS

v.

MERCURY PETROLEUM, INC., et al.                                                                DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiffs' Motion for Temporary Restraining Order (Docket #12). Defendants Petro Development and 530 West Main filed a response (Docket #15) to which Plaintiffs replied (Docket #16). A hearing on the matter was held on July 1, 2008. This matter is now ripe for adjudication.

**BACKGROUND**

This case involves a dispute over the ownership rights in several oil wells located on a farm owned by Danny Burris in Adair County, Kentucky. On September 27, 2007, Energistica and Mercury Petroleum Co, Inc. ("Mercury") entered into an Amended Assignment of Oil and Gas Lease ("Amended Assignment"). Under the Amended Assignment, Energistica and Mercury agreed to divide the leased portion of the Burris farm (the "Property") into a checkerboard for purposes of dividing oil drilling and exploration rights between the two companies. This checkerboard arrangement divides the Property into a grid of four-acre square parcels. Under the terms of the Amended Assignment, the checkerboard protocol provides the exclusive means of drilling for oil on the Property; that is, Energistica and Mercury are permitted to drill for oil on the Property only on squares they select pursuant to the checkerboard protocol. Energistica indicates that, to date, it

has drilled four wells and selected five checkerboard squares pursuant to the Amended Assignment.

Pursuant to the checkerboard method, Energistica was entitled to first select two parcels. Then the parties would alternately select single parcels with Mercury getting the next selection (i.e. the third assigned parcel. Energistica was to commence drilling on at least one of its assigned parcels within thirty days of the execution of the Amended Assignment. Within sixty days of execution, Energistica was to drill a single well deep enough to test the Knox formation. Within sixty days of Energistica's completion of its first well, Mercury was to select a parcel and drill a well deep enough to test the Knox formation, unless oil was encountered sooner. Within sixty days of Mercury's drilling and completing its first well, Energistica was to drill a well on the second of its first two chosen parcels deep enough to test the Knox formation, unless oil was encountered sooner. Thereafter, Energistica and Mercury were to continue to alternate the selection of single parcels and drill at any time within the sixty day drilling schedule.

On April 14, 2008, Peter Smith, Energistica's acting President, received a call from Martin R. Twist, President of Defendants Petro Development and 530 West Main. Twist advised Smith that he owned a stake in the Burris lease, and that he and Terry Goff, who controls Mercury, were upset that Energistica applied a hydraulic fracturing treatment to Energistica Well No. 3 in an effort to make it a producing well. Twist alleged that the acid applied to Energistica Well No. 3 caused production from Mercury Well No. 1 to drop. Twist also alleged that Mercury Well No. 2 stopped producing altogether. Twist informed Smith that Energistica had violated the Amended Assignment by picking certain of its wells out of turn and not drilling to the required depth. Twist stated that his position was that Energistica should forfeit its rights to Energistica Well No. 3 as well as all equipment at that site, and should pay $600,000 per month in damages to compensate for the

purported lost production experienced in Mercury Well No. 1.

Plaintiffs filed this declaratory judgment action on April 17, 2008. Plaintiffs seek a judgment that they have fully complied with the terms of the Amended Assignment and that they are not liable to any of the Defendants for any oil production loss to Mercury Well No. 1. Plaintiffs filed an Amended Complaint on April 30, 2008.

Defendants Petro Development and 530 West Main filed a counterclaim on May 9, 2008, seeking a declaratory judgment that Energistica has forfeited its rights to all of its wells on the Burris lease based on a breach of the Amended Assignment and damages incurred as a result of Energistica's alleged violation of the Amended Assignment and use of hydraulic fracturing treatments.

On May 19, 2008, Defendants Petro Development and 530 West Main recorded a lis pendens against Eneristica Well Nos. 1, 2, and 3 in Adair County.[1] On June 20, 2008, Energistica learned that its oil purchasing company, Barrett Oil Purchasing, Inc., was refusing to disburse any further revenue checks for Energistica's wells while the lis pendens is pending.

On June 24, 2008, Plaintiffs filed the present Motion for Temporary Restraining Order asking this Court to prevent Defendants Petro Development and 530 West Main from enforcing the lis pendens.

In its reply to the present motion, Plaintiffs indicated that Energistica and Mercury have entered into a settlement resolving all claims between them.

---

[1] A lis pendens provides public notice that litigation is pending concerning specific real estate. KRS § 382.440 (2008). A lis pendens may only be filed by a party in interest. *Id.* Because the purpose of the lis pendens is merely to provide notice of the pending litigation, the recording of a lis pendens does not create any additional property rights for the recorder. *Leonard v. Farmers & Traders Bank*, 605 S.W.2d 770, 772 (Ky. Ct. App. 1980).

**STANDARD**

In determining whether to issue a temporary restraining order, the court must consider: "(1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *Summit County Democratic Cent. & Executive Comm. v. Blackwell*, 388 F.3d 547, 550-51 (6th Cir. 2004) (quoting *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).

**DISCUSSION**

**I.     LIKELIHOOD OF SUCCESS**

**A.     Standing**

Plaintiffs assert that the terms of the assignments on which Defendants Petro Development and 530 West Main base their Counterclaim preclude Petro Development and 530 West Main from asserting any claims arising out of the Amended Assignment. Thus, Plaintiffs argue that they have demonstrated a substantial likelihood of proving that neither Petro Development nor 530 West Main have standing to assert a claim in this lawsuit.

In addressing Plaintiffs' Motion to Dismiss Defendants Petro Development and 530 West Main's Counterclaim, this Court found that for purposes of that motion, Defendant 530 West Main had standing to bring its Counterclaim. Having found that 530 West Main had standing, the Court refrained from addressing Petro Development's standing at that time. Based on the reasoning

contained in the memorandum opinion on that motion, this Court finds that it is more likely than not that 530 West Main has standing to assert its claims.[2]

**B.     Energistica Wells 1 and 2**

Plaintiffs acknowledge that, because of its declaratory judgment action, Energistica Well No. 3 is properly the subject of litigation and that the proceeds from that well arguably should be escrowed pending resolution of Plaintiffs' lawsuit. However, Plaintiffs assert that the lis pendens as to Energistica Wells Nos. 1 and 2 is wholly improper and should be dissolved.

Energistica Wells Nos. 1 and 2 were brought into this litigation pursuant to the Counterclaim of Defendants Petro Development and 530 West Main. The Counterclaim alleges that Energistica violated the Amended Assignment by failing to drill Energistica Wells Nos. 1 and 2 to a sufficient depth and seeks a declaratory judgment that Energistica has forfeited it rights to Energistica Wells Nos. 1, 2, and 3 as a result. This claim is premised upon a provision within the Amended Assignment which states:

> [Energistica] shall be entitled to select its first two parcels. Then the parties will alternately select single parcels with [Mercury] getting the next selection (i.e. the

---

[2]   530 West Main is party to two assignments ("530 West Main Assignments") between itself and Mercury, dated October 19 and 27, 2007. In the October 19, 2007 assignment, Mercury assigned its right to choose three well site drilling locations to 530 West Main and on October 29, 2007, the right to choose five well site locations.

On June 5, 2008, three assignments from 530 West Main to Mercury, dated December 28, 2007, were filed with the Adair County clerk. There is language in each of the assignments that purports to reassign to Mercury three wellsite drilling locations, for a total of nine wellsite drilling locations. The language which reassigns wellsite drilling locations to Mercury in the first of these three assignments assigns wells that were assigned to 530 West Main on October 29, 2008. 530 West Main challenges the validity of the latter two assignments. 530 West Main asserts that it retains the right to choose five wellsite drilling locations (from among Mercury's choices) pursuant to the Amended Assignment. The Court will not address this factual dispute at this time.

5

> third assigned parcel.) [Energistica] shall commence drilling on at least one of its assigned parcels within 30 days of the execution of this Amended Assignment. Within 60 days of execution of this agreement, [Energistica] shall drill a single well deep enough to test the Knox formation.

Plaintiffs represent that the "Knox formation" is an oil bearing formation found at a depth of approximately 1550 feet in Adair county.

Under the terms of the forfeiture provision within the Amended Assignment, failure to drill down to the Knox formation within sixty days of picking a checkerboard square constitutes abandonment of that square. However, this forfeiture provision provides that there is no need to drill down to the Knox formation if oil is encountered sooner:

> If the Assignor or Assignee fails to drill a well deep enough to test the Knox formation (unless oil is encountered sooner) on a chosen parcel within the 60 day timeframe set forth above, said failure shall constitute a known, willing and voluntary abandonment of the choosing party's right to drill on said parcel.

Plaintiffs indicate that Energistica encountered a substantial quantity of oil in the "Murfreesboro formation" with its No. 1 and No. 2 wells. Plaintiffs indicate that the Murfreesboro formation is found at a shallower depth than the Knox formation. Plaintiffs assert that as they encountered oil sooner than the Knox formation, they should not be deemed to have abandoned these wells. Petro Development and 530 West Main do not dispute the fact that Plaintiffs discovered oil prior to reaching the Knox formation.

This Court finds that Plaintiffs have shown a strong likelihood of success as to Defendants Petro Development and 530 West Main's Counterclaim with respect to Energistica Wells Nos. 1 and 2. Plaintiffs indicate, and Defendants do not dispute, that Energistica reached oil prior to drilling to the level of the Knox formation. Under the Amended Assignment, Energistica only forfeits the right to a parcel if it does not drill to the level of the Knox formation *and* does not encounter oil

prior to reaching the Knox formation. As Energistica encountered oil prior to drilling to the level of the Knox formation, Plaintiffs do not forfeit the right to Energistica Wells No. 1 and 2 by failing to drill to the level of the Knox formation.

## II. IRREPARABLE INJURY

When economic loss can be calculated and compensated by monetary damages, there is generally no claim for irreparable injury. *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). "However, an injury is not fully compensable if the nature of the plaintiff's loss would make damages difficult to calculate." *Id.*

In Kentucky, transfers of oil and gas are treated as transfer of real property. *United Fuel Gas Co. v. Swiss Oil Corp.*, 41 F.2d 4, 5-6 (6th Cir. 1930). This allows parties to contracts involving these resources to seek out the equitable remedies reserved for transfers of real property. *Id.*

Plaintiffs assert that the lis pendens filed by Defendants Petro Development and 530 West Main has prevented Plaintiffs from transferring and selling their oil. The company that trucks and purchases Plaintiffs' oil, Barrett Oil Purchasing, is refusing to distribute the proceeds of Energistica's wells until the lis pendens is removed.

Plaintiffs also assert that the lis pendens places Plaintiffs at risk of forfeiting their rights to certain parcels under the Amended Assignment. Pursuant to the Amended Assignment, Energistica must drill a selected parcel within a set amount of time or risks forfeiting that parcel to Mercury. Petrotech Resources, the company that Plaintiffs hires to drill and operate their oil wells, will not drill or operate a well for free. Plaintiffs state that they require revenues from their existing wells to fund further drilling.

Plaintiffs further assert that the oil pools are highly transient in this part of the state.

Plaintiffs state that if a neighboring well begins to pump oil from a pool that Plaintiffs would have been able to tap into but for Defendants' interference, then Plaintiffs could forever lose the opportunity to enjoy those revenues.

Defendants Petro Development and 530 West Main contend that the filing of a lis pendens does not encumber property and cannot cause irreparable harm; however, courts have issued equitable orders preventing enforcement of improper lis pendens under similar circumstances. *See In re Hipp, Inc.*, 5 F.3d 109, 112 (5th Cir. 1993) (affirming criminal contempt conviction where litigant disregarded bankruptcy court's order to remove multiple lis pendens filed in bad faith and which were interfering with sale of real property); *Fed. Home Loan Mortgage Crop. v. Dietrich*, No. 01-72268, 2001 U.S. Dist. LEXIS 11834, at *2 (E.D. Mich. June 22, 2001) (granting motion for injunctive relief requiring removal of lis pendens because "Plaintiff has demonstrated a solid basis for irreparable harm in that the filing of the lis pendens has caused its inability to sell the property.").

In the instant case, this Court finds that the filing of the lis pendens has caused irreparable harm. Barrett Oil Purchasing has refused to distribute the proceeds of Energistica's wells until the lis pendens is removed, thus the lis pendens is interfering with Plaintiffs' ability to sell their property. This, in turn, subjects Plaintiffs to the substantial risk of being forced to forfeit their selected parcels as they do not have the resources to allow them to drill on those parcels.

### III.  HARM TO OTHERS

Neither Defendant Petro Development or Defendant 530 West Main indicate how the issuance of the temporary injunction would harm Defendants or others.

### IV.  PUBLIC INTEREST

Defendants Petro Development and 530 West Main do not address how the proposed

temporary restraining order would affect the public interest.  Plaintiffs assert that the public interest would be served by not enforcing the lis pendens as it would prevent Defendants from asserting baseless claims concerning a contract in which they have no interest, and it would facilitate an orderly dispersal of oil revenues pursuant to contracts entered into by Energistica, Mercury, and their assigns.

This Court finds that the public interest may suffer if the lis pendens were not enforced as the lis pendens serves to provide public notice that litigation is pending concerning specific real estate.  This interest only exists as to those properties for which Defendants Petro Development and 530 West Main assert a valid claim.

## CONCLUSION

Balancing the above considerations, this Court finds that Plaintiffs have shown a likelihood of success on Defendants Petro Development and 530 West Main's Counterclaim concerning Energistica Wells Nos. 1 and 2 and have also demonstrated irreparable harm if the lis pendens remains in place.  The Court finds that the harm to others and the public interest do not support denying the motion as regards these specific wells.  However, the Court finds that the balance of these same considerations does not support granting Plaintiffs' motion with respect to Energistica Well No. 3.

At the telephonic status conference on August 8, 2008, the Court shall consider an appropriate bond.  The Court shall not issue the temporary restraining order until after said conference.