UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:08CV-60-R

ENERGISTICA, S.A., et al.                                                                          PLAINTIFFS

v.

MERCURY PETROLEUM, INC., et al.                                                        DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment (Docket #29). Defendants Petro Development and 530 West Main filed a response (Docket #42) to which Plaintiffs replied (Docket #56). This matter is now ripe for adjudication. For the reasons that follow, Plaintiffs' Motion for Partial Summary Judgment is GRANTED.

## BACKGROUND

This case involves a dispute over the ownership rights in several oil wells located on a farm owned by Danny Burris in Adair County, Kentucky. On September 27, 2007, Energistica and Mercury Petroleum Co, Inc. ("Mercury") entered into an Amended Assignment of Oil and Gas Lease ("Amended Assignment"). Under the Amended Assignment, Energistica and Mercury agreed to divide the leased portion of the Burris farm (the "Property") into a checkerboard for purposes of dividing oil drilling and exploration rights between the two companies. This checkerboard arrangement divides the Property into a grid of four-acre square parcels. Under the terms of the Amended Assignment, the checkerboard protocol provides the exclusive means of drilling for oil on the Property; that is, Energistica and Mercury are permitted to drill for oil on the Property only on squares they select pursuant to the checkerboard protocol.

Section 5 of the Amended Assignment provides:

> [Energistica] shall be entitled to select its first two parcels. Then the parties will alternately select single parcels with [Mercury] getting the next selection (i.e. the third assigned parcel). [Energistica] shall commence drilling on at least one of its assigned parcels within 30 days of the execution of this Amended Assignment. Within 60 days of the execution of this agreement, [Energistica] shall drill a single well deep enough to test the Knox formation.
> Within 60 days of [Energistica]'s completion of its first well, [Mercury] shall select a parcel and drill a well deep enough to test the Knox formation., [sic] unless oil is encountered sooner.
> Within 60 days of Assignor's drilling and completing its well, [Energistica] shall drill a well on the second of its first two chosen parcels deep enough to test the Knox formation, unless oil is encountered sooner.
> Thereafter, [Energistica] and [Mercury] shall continue to alternate the selection of single parcels and may drill at any time within the 60 day drilling schedule as set forth in this paragraph.
> If [Mercury] or [Energistica] fails to drill a well deep enough to test the Knox formation (unless oil is encountered sooner) on a chosen parcel within the 60 day timeframe set forth above, said failure shall constitute a known, willing and voluntary abandonment of the choosing party's right to drill on said parcel.
> Each pick referenced hereinabove shall be exercised within 10 days of completion of the previously drilled parcel. Notice shall be promptly given by each party to the other, as to completion and/or selection of parcels.

Because it had already done so under the terms of the previous assignment, the parties agreed that Energistica had selected its first well, Energistica Well No. 1, on August 22, 2007. Energistica selected its second well, Energistica Well No. 2, on September 27, 2007. Energistica completed Energistica Well No. 1 on October 18, 2007. Energistica did not drill Energistica Well No. 1 to the Knox formation because oil was encountered sooner, at the Murfreesboro formation. Energistica completed Energistica Well No. 2 on January 12, 2008. From September 27, 2007 to April 14,

2

2008, Energistica selected four wells and completed three, and Mercury selected three wells and completed two.

On April 14, 2008, Peter Smith, Energistica's acting President, received a call from Martin R. Twist, President of Defendants Petro Development and 530 West Main. Twist advised Smith that he owned a stake in the Burris lease, and that he and Terry Goff, who controls Mercury, were upset that Energistica applied a hydraulic fracturing treatment to Energistica Well No. 3 in an effort to make it a producing well. Twist also claimed that Energistica had violated the Amended Assignment by not drilling a single well to the Knox formation as demanded by the Amended Assignment, which he claimed constituted an abandonment of Energistica's right to drill on that parcel.

Plaintiffs filed this declaratory judgment action on April 17, 2008 and filed an Amended Complaint on April 30, 2008. They seek a judgment that their selection and interests in Energistica Well No. 3 are valid and enforceable, as well as that they owe no compensation to Defendants related to Energistica's application of a hydrolic fracturing treatment in Energistica Well No. 3.[1]

Defendants Petro Development and 530 West Main filed a counterclaim on May 9, 2008. Defendant 530 West Main seeks a declaratory judgment stating that Energistica has forfeited its rights to Energistica Wells Nos. 1, 2, and 3, and establishing ownership rights as between Mercury and itself to the wells. Defendant Petro Development seeks compensatory damages from Energistica.

---

[1] In subsequent filings made with this Court, Energistica indicated that Energistica and Mercury have entered into a settlement resolving all claims between them.

**STANDARD**

Energistica asserts that it is entitled to judgment as a matter of law holding that its rights to Energistica Well Nos. 1 and 2 are intact. Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150,

165 (6th Cir. 1993).

## DISCUSSION

Defendants' counterclaim states that the Amended Assignment required Energistica to drill a well deep enough to test the Knox formation within 60 days of execution of the Amended Assignment, or by November 26, 2007. Because Energistica did not drill a well deep enough to test the Knox formation by November 26, Defendants assert that "Energistica forfeited its right to one or both of its first two chosen parcels." Energistica contends that because it encountered oil at a shallower depth than the Knox formation in both Well Nos. 1 and 2, it was relieved of any contractual obligation to drill deeper. Energistica argues that the plain language of the remedy provision of the Amended Assignment precludes Defendants' interpretation of the contract. In the alternative, Energistica offers the affidavits of Bill Allen, who negotiated and signed the Amended Agreement on behalf of Energistica, and Terry Goff, who negotiated and signed the Amended Agreement on behalf of Mercury. Both affidavits explain that no party was required to drill through oil to test the Knox formation.[2] Defendants maintain that the Amended Agreement is unambiguous and "clearly imposes the requirement that Energistica drill a well deep enough to test the Knox Formation within 60 days of signing the contract, *whether or not oil is encountered sooner*."

"[T]he construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." *Frear v. P.T.A. Indus.*, 103 S.W.3d 99, 105 (Ky.

---

[2] Paragraph 5 of each affidavit states: "'It was my intent that, of course, neither party was required to drill through oil, or ignore the discovery of oil, or drill below the level at which oil was encountered simply to thereafter 'test the Knox formation.' Such a requirement would be contrary to the intent of the Agreement. . . . My intent – that a party drill at least as far as the Knox formation *unless* oil is encountered sooner – is reflected in the clear language of the Agreement . . . ."

5

2003) (quoting *First Commonwealth Bank v. West*, 55 S.W.3d 829, 835 (Ky. Ct. App. 2000)). "[I]n the absence of ambiguity a written instrument will be enforced strictly according to its terms." *Id.* (quoting *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966)). If the contract is unambiguous, the Court will "interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Id.* If an ambiguity exists, "the court will gather, if possible, the intent of the parties from the contract as a whole, and in doing so will consider the subject matter of the contract, the situation of the parties and the conditions under which the contract was written, by evaluating extrinsic evidence as to the parties' intentions." *Id.* (internal quotation omitted). Under Kentucky contract law, a contract is ambiguous "if it is reasonably susceptible to different or inconsistent interpretations." *Transport Ins. Co. v. Ford*, 886 S.W.2d 901, 905 (Ky. Ct. App. 1994).

The Court finds that the Amended Assignment is not ambiguous. When Section 5 is read as a whole, it is clear that Energistica was not required to drill to the Knox formation within 60 days of execution of the contract if it encountered oil sooner. The remedy provision provides that a party forfeits its rights to a chosen parcel if that party "fails to drill a well deep enough to test the Knox formation (unless oil is encountered sooner)" within the 60 day time frame set forth by the Amended Agreement. Defendants interpretation of the Amended Agreement is not reasonable in light of this remedy provision. The only reasonable interpretation of the Amended Agreement is that Energistica was required to drill a well within 60 days of execution of the agreement on one of its first two chosen parcels deep enough to test the Knox formation, unless oil was encountered sooner. Because Energistica completed Energistica Well No. 1 on October 18, well within the 60 day time frame, drilling deep enough to encounter oil, it did not breach the Amended Agreement.

In the alternative, even if the Amended Assignment is susceptible to different interpretations, extrinsic evidence demonstrates that the intent of the parties was to require each party to drill at least to the Knox formation, unless oil was encounter sooner. As explained in the affidavits of Allen and Goff, the parties did not intend to require Energistica to drill past oil simply to test the Knox formation within 60 days of the execution of the contract.[3]

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment is GRANTED.

An appropriate order shall issue.

---

[3] Energistica also refers this Court to Goff's testimony at the July 1, 2008 hearing where he stated that it would not have been possible to drill past oil to the Knox formation because the wells in this matter are drilled with air, and also that drilling through oil would create an environmental problem. Defendants offer the testimony of Dr. Michael T. May, a professor of geology, who states that it is not uncommon to require a party to test a certain formation even if oil is discovered at a shallower depth. In response to May, Energistica offers the testimony of Michael P. Sanders, a geologist, who states that halting drilling on Energistica Well No. 1 was the only proper action due to safety, environmental, and mechanical concerns. The Court finds that the affidavits of Allen and Goff, the individuals who negotiated and signed the Amended Agreement on behalf of the parties, are the best evidence of the intention of the parties.